**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

```
_____
                           :
JUAN ROSARIO,              :
                           :     Civil Action No. 04-5837 (FLW)
          Petitioner,      :
                           :
     v.                    :
                           :          OPINION
THE STATE OF NEW JERSEY,   :
et al.,                    :
                           :
          Respondents.     :
_____:
```

**APPEARANCES:**

> JUAN ROSARIO, Petitioner <u>Pro Se</u>
> SPN # 306338
> South Wood State Prison
> SWSP-5-2-L
> 215 Burlington Road South
> Bridgeton, New Jersey 08302
>
> JAMES F. SMITH, ESQ.
> Atlantic County Prosecutor's Office
> 4997 Unami Boulevard
> P.O. Box 2002
> Mays Landing, New Jersey 08330
> Attorneys for Respondents

**WOLFSON, District Judge**

This matter is before the Court on petitioner Juan Rosario's application for habeas corpus relief under 28 U.S.C. § 2254. For the reasons stated below, the petition for habeas relief will be denied for failure to make a substantial showing of a federal statutory or constitutional deprivation.

I.   <u>PROCEDURAL BACKGROUND</u>

Petitioner, Juan Rosario ("Rosario"), is presently confined at the South Wood State Prison in Bridgeton, New Jersey, serving a twenty year prison term with a parole ineligibility period under the No Early Release Act.

Rosario pled guilty to an accusation of aggravated manslaughter on July 2, 1998, and was sentenced on November 6, 1998.  Pursuant to a plea agreement, under which petitioner agreed to plead guilty to aggravated manslaughter in exchange for a discretionary sentence between 10 to 20 years in prison with 85% of the term subject to parole ineligibility under the No Early Release Act, the sentencing court imposed a twenty year prison term.  Rosario appealed, raising two claims for relief from conviction: (1) that his sentence was excessive; and (2) that the court should have allowed petitioner to withdraw his guilty plea.  The Appellate Division affirmed the conviction and sentence in an unpublished opinion filed on June 29, 1999. Rosario did not seek discretionary review of the Appellate Court's decision from either the Supreme Court of New Jersey or the Supreme Court of the United States.

Rosario alleges that he has filed three or four petitions with the state court for post-conviction relief ("PCR"). However, the record presented to the Court by respondents show that a state PCR petition was filed and later withdrawn in 2000,

2

and then later filed again on October 23, 2001.  The PCR petition
asserted that petitioner's trial counsel rendered ineffective
assistance and representation with respect to the guilty plea.  A
PCR hearing was conducted on May 10, 2002, in which the court
heard oral argument from counsel.  The court denied the PCR
petition by Order entered on May 22, 2002.  Rosario appealed the
PCR court's decision, but the Appellate Division affirmed by an
unpublished opinion filed on June 1, 2004.  The New Jersey
Supreme Court denied certification on September 15, 2004.

Thereafter, on or about November 29, 2004, Rosario filed
this habeas petition.  He also submitted a motion for appointment
of counsel on or about April 25, 2005.  Respondents answered the
petition on April 29, 2005.

## II.  <u>CLAIMS FOR HABEAS RELIEF</u>

Rosario raises the following claims in his habeas petition,
which were presented on state court review: (1) petitioner was
entitled to an evidentiary hearing to determine if he received
ineffective assistance of counsel; (2) trial counsel failed to
conduct an adequate and independent investigation of the case;
(3) trial counsel failed to properly advise petitioner of the
consequences of his plea agreement; (4) trial counsel misled
petitioner about the presumptive term of exposure and the
applicability of the No Early Release Act; (5) trial counsel
failed to prepare for the sentencing hearing.  In addition,

3

petitioner generally alleges, without factual support, that the trial court did not give proper instructions to petitioner with respect to his plea, and that the prosecutor mishandled the case.

In response to the petition, the State raises the affirmative defense that petitioner failed to exhaust his state court remedies, and that some of the claims are procedurally defaulted.  The State also argues that there is no merit to petitioner's claims.  To the extent any of the claims asserted by Rosario in this petition were not exhausted in state court, this Court may opt to review such claims, and deny them on the merits pursuant to 28 U.S.C. § 2254(b)(2).  Section 2254(b)(2) provides that "[a]n application for writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."  <u>See also</u> <u>Lambert v. Blackwell</u>, 134 F.3d 506, 514-15 (3d Cir. 1997), <u>cert</u>. <u>denied</u>, 532 U.S. 919 (2001)(a district court may deny a petition on the merits, pursuant to 28 U.S.C. § 2254(b)(2), where "it is perfectly clear that an applicant does not raise even a colorable federal claim").

III.   <u>STANDARD GOVERNING REVIEW OF § 2254 CLAIMS</u>

The Court recognizes that a <u>pro se</u> pleading is held to less stringent standards than more formal pleadings drafted by attorneys.  <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976); <u>Haines v. Kerner</u>, 404 U.S. 519, 520 (1972).  Thus, a <u>pro se</u> habeas petition

4

should be construed liberally and with a measure of tolerance. See <u>Royce v. Hahn</u>, 151 F.3d 116, 118 (3d Cir. 1998); <u>Duarte v. Hurley</u>, 43 F. Supp.2d 504, 507 (D.N.J. 1999).  Because Rosario is a <u>pro</u> <u>se</u> litigant, the Court will accord his petition the liberal construction intended for <u>pro</u> <u>se</u> petitioners.

Under § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), federal courts in habeas matters must give considerable deference to determinations of the state trial and appellate courts.  See 28 U.S.C. § 2254(e); <u>Duncan v. Morton</u>, 256 F.3d 189, 196 (3d Cir.), <u>cert</u>. <u>denied</u>, 122 S.Ct. 269 (2001); <u>Dickerson v. Vaughn</u>, 90 F.3d 87, 90 (3d Cir. 1996)(*citing* <u>Parke v. Raley</u>, 506 U.S. 20, 36 (1992)).  Section 2254(d) sets the standard for granting or denying a habeas writ:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> > (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

In <u>Williams v. Taylor</u>, 529 U.S. 362 (2000), the Supreme Court explained that subsection (d)(1) involves two clauses or

conditions, one of which must be satisfied before a writ may issue.  The first clause, or condition, is referred to as the "contrary to" clause.  The second condition is the "unreasonable application" clause.  <u>Williams</u>, 529 U.S. at 412-13.  In the "contrary to" clause, "a federal court may grant the writ if the state arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts."  <u>Id</u>.  Under the "unreasonable application" clause, a federal court may grant the writ if "the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of [the petitioner's] case."  <u>Id</u>. at 413.  Habeas relief may not be granted under the "unreasonable application" condition unless a state court's application of clearly established federal law was objectively unreasonable; an incorrect application of federal law alone is not sufficient to warrant habeas relief.  <u>Id</u>. at 411.  <u>See also</u> <u>Werts v. Vaughn</u>, 228 F.3d 178, 197 (3d Cir. 2000), <u>cert</u>. <u>denied</u>, 532 U.S. 980 (2001); <u>Matteo v. Superintendent, SCI Albion</u>, 171 F.3d 877, 891 (3d Cir. 1999), <u>cert</u>. <u>denied</u> <u>sub</u> <u>nom</u> <u>Matteo v. Brennan</u>, 528 U.S. 824 (1999).

Consonant with <u>Williams</u>, the Third Circuit has held that § 2254(d)(1) requires a federal habeas court to make a two step

inquiry of the petitioner's claims.  First, the court must examine the claims under the "contrary to" provision, identify the applicable Supreme Court precedent and determine whether it resolves petitioner's claims.  See Werts, 228 F.3d at 196-97; Matteo, 171 F.3d at 888-891.  If the federal court determines that the state court's decision was not "contrary to" applicable Supreme Court precedent, then the court takes the second step of the analysis under § 2254(d)(1), which is whether the state court unreasonably applied the Supreme Court precedent in reaching its decision.  Werts, 228 F.3d at 197.

This second step requires more than a disagreement with the state court's ruling because the Supreme Court would have reached a different result.  Id.  AEDPA prohibits such de novo review.  Rather, the federal habeas court must determine whether the state court's application of the Supreme Court precedent was objectively unreasonable.  Id.  In short, the federal court must decide whether the state court's application of federal law, when evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified under existing Supreme Court precedent.  Id.; see also Jacobs v. Horn, 395 F.3d 92, 100 (3d Cir. 2005).

Finally, federal courts are required to apply a "presumption of correctness to factual determinations made by the state court."  Id.; see also 28 U.S.C. § 2254(e)(1).  The Third Circuit

7

has ruled that this presumption of correctness based upon state court factual findings can only be overcome by clear and convincing evidence.  See Duncan, 256 F.3d at 196 (*citing* 28 U.S.C. § 2254(e)(1)).  Consequently, a habeas petitioner "must clear a high hurdle before a federal court will set aside any of the state court's factual findings."  Mastracchio v. Vose, 274 F.3d 590, 597-98 (1st Cir. 2001).

## VI.   ANALYSIS

### A.   Ineffective Assistance of Counsel Claims

The "clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), is the standard for ineffective assistance of counsel as enunciated in Strickland v. Washington, 466 U.S. 668 (1984).  Under Strickland, a petitioner seeking to prove a Sixth Amendment violation must demonstrate that his counsel's performance fell below an objective standard of reasonableness, assessing the facts of the case at the time of counsel's conduct.  Id. at 688-89; Jacobs v. Horn, 395 F.3d 92, 102 (3d Cir. 2005); Keller v. Larkins, 251 F.3d 408, 418 (3d Cir.), cert. denied, 534 U.S. 973 (2001).  Counsel's errors must have been "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."  Strickland, 466 U.S. at 688.  "In any case presenting an ineffectiveness claim, the performance inquiry must be whether

counsel's assistance was reasonable considering all the

circumstances." Id.  The Supreme Court further explained:

> Judicial scrutiny of counsel's performance must be
> highly deferential.  It is all too tempting for a
> defendant to second-guess counsel's assistance after
> conviction or adverse sentence, and it is all too easy
> for a court, examining counsel's defense after it has
> proved unsuccessful, to conclude that a particular act
> or omission of counsel was unreasonable.  A fair
> assessment of attorney performance requires that every
> effort be made to eliminate the distorting effects of
> hindsight, to reconstruct the circumstances of
> counsel's challenged conduct, and to evaluate the
> conduct from counsel's perspective at the time.
> Because of the difficulties inherent in making the
> evaluation, a court must indulge a strong presumption
> that counsel's conduct falls within the wide range of
> reasonable professional assistance; that is, the
> defendant must overcome the presumption that, under the
> circumstances, the challenged action "might be
> considered sound trial strategy."

Id. at 689 (citations omitted); see also Virgin Islands v.

Wheatherwax, 77 F.3d 1425, 1431 (3d Cir.), cert. denied, 519 U.S.

1020 (1996).

If able to demonstrate deficient performance by counsel,

petitioner must also show that counsel's substandard performance

actually prejudiced his defense.  Strickland, 466 U.S. at 687.

Prejudice is shown if "there is a reasonable probability that,

but for counsel's unprofessional errors, the result of the

proceeding would have been different.  A reasonable probability

is a probability sufficient to undermine confidence in the

outcome."  Id. at 694.  The reviewing court must evaluate the

effect of any errors in light of the totality of the evidence.

<u>Id</u>. at 695-96.  Thus, the petitioner must establish both
deficient performance and resulting prejudice in order to state
an ineffective assistance of counsel claim.  <u>Id</u>. at 697.  <u>See
also</u> <u>Jacobs</u>, 395 F.3d at 102; <u>Keller</u>, 251 F.3d at 418.

    1.  *Trial Counsel Failed to Conduct an Adequate and
Independent Investigation of the Case*.

    Rosario alleges that his trial counsel failed to conduct an
adequate and independent investigation of the facts and
circumstances surrounding the murder of petitioner's brother.
For instance, the attorney never interviewed witnesses or the
investigating police officers.  Counsel also failed to confer
with petitioner before the plea, and instead relied on counsel's
investigator who had interviewed Rosario.

    This claim was raised on Rosario's state PCR petition.  At
the hearing, the State argued that there was simply nothing to
investigate.  Rosario gave a statement to the investigating
officers that he had an argument with his brother and stabbed
him.  There was no allegation of self defense, and no facts to
support such a defense.  Indeed, the only defense that could be
asserted, intoxication, was plainly taken into consideration in
the plea bargain, which reduced an accusation of murder to
aggravated manslaughter.

    The PCR court rejected Rosario's claim, finding that:

    ... I opined at the time of the sentencing that I didn't see
    any viable self-defense in the case.  There may -- There

> could have been intoxication I suppose, and I recognize that
> the Prosecutor's Office likely took that into consideration
> in allowing him to plead to agg man rather than going to the
> wall on murder, and probably in some recognition of the
> family here who was torn between as the victim one of
> theirs, and the defendant one of theirs. ... It was worked
> out relatively early to everyone's credit.  A fair
> resolution was accomplished.

(May 10, 2002 PCR Transcript, 15:12-16:3).  The Appellate

Division affirmed the denial of PCR on appeal, stating that

petitioner's claims "are based on mere assertions, and as a

result his showing is insufficient."  (Appellate Division

Opinion, dated June 1, 2004, at pg. 4).

"[A]n attorney must investigate a case, when he has cause to

do so, in order to provide minimally competent professional

representation."  United States v. Kauffman, 109 F.3d 186, 190

(3d Cir. 1997); Lewis v. Mazurkiewicz, 915 F.2d 106, 111 (3d Cir.

1990)(counsel has a duty to investigate or to make a reasonable

decision that makes particular investigations unnecessary).  When

assessing an ineffectiveness claim based on failure to

investigate, a court must assess the decision not to investigate

"for reasonableness in all the circumstances, applying a heavy

measure of deference to counsel's judgments."  Strickland, 466

U.S. at 691; Kimmelman v. Morrison, 477 U.S. 365, 384 (1986); see

also Duncan v. Morton, 256 F.3d 189, 201 (3d Cir.), cert. denied,

534 U.S. 919 (2001).  "[S]trategic choices made after less than

complete investigation are reasonable precisely to the extent

that reasonable professional judgments support the limitations on

11

investigation." <u>Strickland</u>, 466 U.S. at 691-92.  Even if counsel was deficient in his decision not to investigate, a petitioner must show a reasonable likelihood that, but for the deficiency, the result of the proceeding would have been different.  <u>Lewis</u>, 915 F.2d at 115.  In this instance, Rosario must show that, but for counsel's failure to investigate, his case would have had a different outcome.

Having reviewed the record, this Court finds that petitioner is unable to prove ineffectiveness of trial counsel on this ground, because he can not demonstrate either prong of the <u>Strickland</u> test.  The trial court found, and this Court agrees, that there was no apparent defense available to petitioner that counsel could have investigated based on the discovery she had received from the State and her own investigator.  It is evident that the issue of petitioner's intoxication was a mitigating factor used by counsel and the prosecutor in reducing the initial charge of murder to aggravated manslaughter by plea agreement. It is difficult to imagine, even on hindsight, what more counsel could have done for Rosario given petitioner's own statement or admission of guilt and lack of witnesses to support a self defense claim.  Moreover, there is simply nothing proffered by Rosario to show that, had he been tried, he would not have been convicted or would have received a lesser sentence.

Accordingly, this Court finds nothing to indicate that the state court decisions on this ineffectiveness of counsel claim were based on an unreasonable application of the facts. Nor were the decisions contrary to the established federal law under Strickland. Both the PCR court and the Appellate Division adhered to the Strickland standard, and found neither deficient performance by counsel nor prejudice to satisfy the two-pronged test under Strickland. Rosario has not demonstrated to this Court that the state court decisions, when evaluated objectively and on the merits, resulted in an outcome that cannot be reasonably justified. Matteo, 171 F.3d at 891. Therefore, this first ground of ineffective assistance of counsel is denied for lack of merit.

2. *Trial Counsel Failed to Inform and/or Misled the Petitioner About the Consequences of His Plea Agreement.*

Rosario asserts that trial counsel did not articulate to him the consequences of his plea agreement, and in fact, coerced petitioner into a plea by exploiting petitioner's grief and remorse. He further alleges that counsel misled him about the presumptive term exposure, telling petitioner that he would be sentenced to ten years with a parole disqualifier of 8½ years.

The record plainly disputes this contention. Trial counsel flatly denied the accusation at the sentencing hearing. She stated:

13

At the time of the plea it was contemplated that the
sentence would be no -- not to exceed the presumptive term
of 20 years New Jersey State Prison for a charge of
aggravated manslaughter.  At the time of his plea, I believe
it's clearly on the record that the minimum term that could
be imposed is 10 years, however the maximum that could be
imposed would be 20.  My understanding through the
interpreter, Ms. Saka (phonetic), who has reviewed the
presentence with Mr. [Rosario], and there's no corrections
to made therein, is that Mr. [Rosario] now wishes to
withdraw his plea and have this matter placed on the trial
list.

(November 6, 1998 Sentencing Transcript, 3:3-14).

In the PCR proceeding, the court commented:

I've reviewed the transcript of the plea, the sentencing
transcript.  It occurs to me that it didn't count for
something that the Court's efforts, undertaking of the
guilty plea, are meaningless.  Certainly it could be said
that the magic words are said just have the plea go through
and perhaps there is some coercion that's taken out of place
or some fraud, if you will, being perpetrated by the defense
attorney who is saying things that are not put on the table
and so forth.  Certainly those things could be said and
hopefully, if that is the case, then we -- we -- we know one
from the other and undertake to undo a wrong that was done.
Here I think I -- as -- or in a manner is unthreatening as I
could possibly could be, talked to Mr. Rosario, asked
questions.  I don't think that he should have been afraid to
tell me what the truth was if his lawyer was telling him,
because I talked to him about -- the family was here.  They
heard it.  I talked to him about what the possible
consequences were, and if Ms. Szabo was telling him that
there's no way you can get to the twenty, I don't understand
what was going on in Court that day that Mr. Rosario would
not have felt free to say, Judge, my lawyer's telling me it
can't be twenty.  There's no way that you're going to give
me twenty.  I conducted a hearing I think was fair, that was
designed to make sure that Mr. Rosario knew what he was
doing, and I think he did.  And not only is there no
evidence that Ms. Szabo did what Mr. Rosario says she did,
In, fact, frankly, you know, these aren't Mr. Rosario's
words, let's face it.  Somebody in prison wrote this up for
him and, you know, I, frankly, doubt whether he even knows
what is in that petition.  But knowing Ms. Szabo the way I
do, I seriously, gravely doubt that she would have made

those representations to him.  She's just not that kind of
lawyer.  More important, she's not that kind of person.
Certainly, if there was any indication that that had been
done a plenary would be in order or a evidentiary hearing.
I think, however, that more is required than a mere saying
by the defendant that she said these things.

(May 10, 2002 PCR Transcript, 13:10-14:25).

This Court's review of the plea transcript and the
sentencing transcript reveals no evidence that trial counsel
misinformed or actively misled petitioner about his presumptive
term exposure.  Rosario was well informed by his counsel and the
trial court as to the possibility of a 20-year hit and the
application of the No Early Release Act.

Moreover, Rosario fails to make a showing of prejudice on
this claim, *i.e.*, that the result of his criminal proceedings
would have been different had he gone to trial.  To satisfy the
"prejudice" prong under Strickland, in evaluating a claim of
ineffective assistance of counsel in the context of a guilty
plea, petitioner must show that, but for counsel's errors, he
would not have pleaded guilty or would have insisted on going to
trial.  Here, it is plain from the record provided in this case
that there was substantial evidence of petitioner's guilt on the
charge of murder, but Rosario's counsel wisely dealt with the
prosecutor to reduce the charge to aggravated manslaughter based
on Rosario's intoxication at the time.  A murder trial would have
likely resulted in a conviction and a greater sentence imposed.
Indeed, the evidence was strong against Rosario.  He admitted his

15

guilt in a statement to the police.  He described the incident to investigators, which report showed that Rosario argued with his brother, got up and went into the kitchen to get a knife, and came back and stabbed his brother.  Thus, it seems abundantly clear that acceptance of a guilty plea in this case served to avoid a trial for murder and the potential for a harsher sentence upon conviction.  At the very least, even if  petitioner would have been tried, he would have been convicted based on the strong evidence against him, resulting in the same or similar outcome as achieved by the guilty plea.

Thus, this Court finds absolutely nothing in the record to suggest deficient representation by counsel or any resulting prejudice, if in fact counsel was deficient.  The state court decisions on this issue of being misled or ill-informed by trial counsel as to the consequences of his plea were based on a reasonable application of the facts and were not contrary to established federal law.  Rosario has not demonstrated to this Court that the state court decisions, when evaluated objectively and on the merits, resulted in an outcome that cannot be reasonably justified.  Matteo, 171 F.3d at 891.  Accordingly, petitioner not having shown any deficiency in his counsel's performance or any resulting prejudice, this second ground of ineffective assistance of counsel is denied for lack of merit.

3.  *Failure to Prepare for the Sentencing Hearing.*

In this claim, Rosario contends that his trial counsel was ill-prepared for his sentencing hearing.  Rosario made known his desire to retract his guilty plea, yet he argues that his own counsel declined to confer with him about it.  Further, Rosario argues that counsel was unprepared and failed to research any mitigating factors to help reduce petitioner's sentence.

The sentencing transcript shows that Rosario's counsel did raise petitioner's request to withdraw his plea, and the court rejected the request because the plea was knowing and was made voluntarily with specific information as to the possibility of a 20-year presumptive prison term.  Rosario's counsel also argued the mitigating factors in this case to the court, noting petitioner's sincere remorse for his crime, and having petitioner's sister testify on his behalf.  Rosario's intoxication was likewise presented to the court, but was principally considered as part of the plea agreement which served to reduce the murder charge to aggravated manslaughter. Nevertheless, despite counsel's efforts, the court found no mitigating factors in its sentence determination, and was clearly persuaded by the aggravated factors to impose the presumptive 20 year term.

> Now, I have reviewed the pre-sentence report in this case
> and I recall quite vividly the record that was made at the
> time of the entry of your guilty plea.  This is senseless,
> needless killing of an obviously tragic proportion that two

brothers should engage in a fight resulting in one of them
being dead.  I can't imagine what the family has gone
through over this.  You and your family claim that you are
not a violent person, however I see that you have
convictions involving crimes of violence, assault,
possession of a weapon.  You had two arrests for assault
with offenses where you were fortunate enough to not have a
conviction on those charges.  In reviewing the circumstances
surrounding the incident I don't agree that this was a
provoked attack.  While you may think that you had a
possible self-defense claim I don't see where that could
have arisen.  I think that you got the benefit of the claim
that you were intoxicated and you got the benefit of a
possible self-defense claim by having the State agree to an
aggravated manslaughter conviction.  In short, I think you
have gotten the most of all that you could arguably be
entitled to by way of mitigation of sentence.  I find
aggravating factors 3, 6 and 9 apply.  No mitigating factors
apply.  I understand that you argue that you were
intoxicated at the time, although once again I think that
that factor was taken into consideration by a plea
agreement.  The aggravating factors certainly outweigh the
mitigating factors.  There is no good reason why I should
deviate in any way from a presumptive term of imprisonment.

(November 6, 1998 Sentencing Transcript, 11:22-12:22).

Indeed, at the PCR hearing, the State argued that whether or

not Rosario's counsel argued mitigating factors, it would not

have made a difference in the sentence based on the aggravating

factors found by the court in this instance.  (May 10, 2002 PCR

Transcript, 12:6-25).  On appeal, the Appellate Division found

all claims of counsel's ineffectiveness to be baseless.

Based on the record, this Court finds that counsel was not

deficient in her representation of petitioner at his sentencing

hearing.  Moreover, there was absolutely no showing of prejudice

or that petitioner's sentence would have been different had

counsel argued the mitigating factors more forcefully.[1]  In this regard, petitioner has failed to meet the <u>Strickland</u> standard in proving ineffectiveness of counsel at the sentencing hearing. Accordingly, there is nothing in the record to suggest that the state court decision was based on an unreasonable application of the facts, or that the court's decision was contrary to established federal law.  Rosario utterly fails to show that the state court's decisions, when evaluated objectively and on the merits, resulted in an outcome that cannot be reasonably justified.  <u>Matteo</u>, 171 F.3d at 891.  Therefore, this claim will also be denied for lack of merit.

B.  <u>Denial of PCR Evidentiary Hearing</u>

In this claim for relief, Rosario generally asserts that the PCR court should have granted him an evidentiary hearing on the issue of whether his trial counsel was ineffective.

Errors in state post-conviction relief proceedings are collateral to the conviction and sentence and do not give rise to a claim for federal habeas relief.  <u>See</u>, <u>e.g.</u>, <u>Ferguson v. State</u>, 1996 WL 1056727 (D.Del. 1996) and cases cited therein. Furthermore, as a general rule, matters of state law and rules of

---

[1]  The Court notes that trial counsel presented mitigating factors of remorse, non-violent personality, and intoxication, but the sentencing court rejected them based on Rosario's criminal record, the nature and circumstances of the crime, and the fact that intoxication was already considered in the plea agreement.  However, Rosario fails to identify any other mitigating factors that should have been presented by counsel.

procedure and evidence are not reviewable in a federal habeas petition.  The Supreme Court has stated that "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).

Federal courts must afford the states deference in its determinations regarding evidence and procedure. See Crane v. Kentucky, 476 U.S. 683, 690 (1986)("we have never questioned the power of the States to exclude evidence through the application of evidentiary rules that themselves serve the interests of fairness and reliability, even if the defendant would prefer to see that evidence admitted").  It is well-established that "a state court's misapplication of its own law does not generally raise a constitutional claim.  The federal courts have no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension." Smith v. Horn, 120 F.3d 400, 414 (3d Cir. 1997)(citations omitted), cert. denied, 522 U.S. 1109 (1998).

Here, it may be construed that Rosario is asserting that the PCR court's denial of an evidentiary hearing violated due process.  Thus, the appropriate inquiry is "whether the claimed error of law is a fundamental defect which inherently results in a complete miscarriage of justice or in an omission inconsistent with the rudimentary demands of fair procedure." Hutchins v.

20

Hundley, 1991 WL 167036 at *4 (D.N.J. Aug. 22, 1991)(Wolin, J.)(citing United States v. De Luca, 889 F.2d 503, 506 (3d Cir. 1989), cert. denied, 496 U.S. 939 (1990))(other citations omitted).  The Supreme Court has further stated that "an otherwise valid conviction should not be set aside if the reviewing court may confidently say on the whole record that the constitutional error was harmless beyond a reasonable doubt." Delaware v. Van Arsdall, 475 U.S. 673, 681 (1986).  An error is not harmless if "it aborts the basic trial process or denies it altogether."  Hutchins, 1991 WL 167036 at *5 (citing Rose v. Clark, 478 U.S. 570, 578 n.6 (1986)).

In this case, a careful review of the PCR proceedings and the state court rulings reveal that Rosario failed to establish a prima facie case of ineffective assistance of counsel that would have allowed the state court to grant an evidentiary hearing. The Court finds that the state PCR court committed no error of a constitutional dimension.  Furthermore, the plea and sentencing transcripts plainly showed that counsel was not derelict in her duties in informing petitioner about the consequences of his plea and that he could be exposed to a 20-year presumptive term on a guilty plea.  Thus, there is no showing that the state court determination in denying the evidentiary hearing "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by

the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." <u>Williams</u>, 529 U.S. at 412-13.  Therefore, this claim is denied for failure to show deprivation of a federal constitutional right.

C.   <u>Trial Court Failed to Explain Consequences of Plea</u>

In this claim, which was not raised in state court, Rosario suggests that the trial court did not adequately inform him of his rights and the consequences of pleading guilty to the charge of aggravated manslaughter.  As referenced earlier in this Opinion, petitioner's claim is belied by the record of the plea.

This claim suggests that Rosario's plea was not voluntary or knowing, in violation of his constitutional right to due process. Due process requires that guilty pleas be entered knowingly and voluntarily.  <u>See</u>, <u>Boykin v. Alabama</u>, 395 U.S. 238, 242 (1969). A guilty plea entered by one fully aware of the direct consequences of the plea is voluntary "'unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e.g. bribes).'"  <u>Brady v. United States</u>, 397 U.S. 742, 755 (1970) (quoting <u>Shelton v. United States</u>, 246 F.2d 571, 572

22

n.2 (5th Cir. 1956) (en banc), <u>rev'd on confession of error on other grounds</u>, 356 U.S. 26 (1958)).  The Court of Appeals for the Third Circuit has held that the only direct consequences relevant to evaluating the voluntariness of a guilty plea are the maximum prison term and fine for the offense charged.  <u>See</u> <u>Parry v. Rosemeyer</u>, 64 F.3d 110, 114 (3d Cir. 1995), <u>cert. denied</u>, 516 U.S. 1058 (1996), <u>superseded by statute on other grounds as stated in</u> <u>Dickerson v. Vaughn</u>, 90 F.3d 87 (3d Cir. 1996).  A guilty plea is made intelligently only if a criminal defendant receives "'real notice of the true nature of the charge against him ... .'"  <u>Bousley v. U.S.</u>, 523 U.S. 614, 618 (1998)(quoting <u>Smith v. O'Grady</u>, 312 U.S. 329, 334 (1941)).

The above standards govern the validity of a guilty plea even when a criminal defendant protests his innocence despite his entry of a guilty plea.

> [W]hile most pleas of guilty consist of both a waiver of trial and an express admission of guilt, the latter element is not a constitutional requisite to the imposition of criminal penalty [when, as in the instant case,] a defendant intelligently concludes that his interests require entry of a guilty plea and the record before the judge contains strong evidence of actual guilt.

<u>North Carolina v. Alford</u>, 400 U.S. 25, 37 (1970).  The Supreme Court noted further that "[b]ecause of the importance of protecting the innocent and of insuring that guilty pleas are a product of free and intelligent choice, various state and federal court decisions properly caution that pleas coupled with claims

23

of innocence should not be accepted unless there is a factual basis for the plea and until the judge taking the plea has inquired into and sought to resolve the conflict between the waiver of trial and the claim of innocence." Id. at 38 n.10 (citations omitted).  Applying Alford, the Court of Appeals for the Third Circuit has held that "there must always exist some factual basis for a conclusion of guilt before a court can accept an Alford plea."  United States v. Mackins, 218 F.3d 263, 268 (3d Cir. 2000), cert. denied, 531 U.S. 1098 (2001).

In this case, Rosario does not assert that he is innocent of killing his brother.  Moreover, he fails to proffer evidence that his plea was given involuntarily, or under duress or by coercion by his counsel.  Rosario also does not argue that he was too young to understand the plea bargain or that there were psychiatric and psychological reports to suggest that he was mentally or emotionally incompetent to understand his plea.  Nor was there any conclusion that Rosario did not understand the seriousness of the crime or that he could not tell right from wrong.  Rather, Rosario contends that he misunderstood the terms of the plea agreement to the extent that he thought he would receive ten years instead of twenty.

At the plea hearing, the trial court carefully questioned Rosario with respect to his plea.  The court questioned Rosario's mental ability to understand his plea and asked petitioner if his

translator was satisfactory.  Questions as to medications, alcohol or other factors that would inhibit petitioner's understanding of the plea were posed.  The court also asked if Rosario spoke with his counsel, and if counsel explained everything to him.  Then the court meticulously explained to Rosario all of his constitutional rights, such as right to trial, right to confront witnesses, right to testify, etc., and asked if Rosario understood these rights and that his plea would serve to waive these rights.  Rosario responded appropriately to all the questions posed by the court with respect to his understanding of the plea and its consequences.

The court also questioned whether petitioner was being coerced into the plea, which Rosario denied.  The court then scrupulously explained to Rosario the possible maximum sentence, a presumptive 20 year term.  The court went over the plea form signed by Rosario and asked if petitioner understood the plea form, and answered and signed the form voluntarily.  Rosario again responded affirmatively to the court's questions.  The plea hearing concluded with Rosario's allocution to the charge of aggravated manslaughter.

From this Court's review of the plea transcript, it is evident that the trial court fully explained all of petitioner's rights to him and made a thorough and appropriate inquiry as to Rosario's understanding, knowledge, and voluntariness of his

plea.  Thus, given the totality of circumstances, the Court concludes that the guilty plea was entered voluntarily and with the requisite knowledge and understanding of its consequences. The Court finds no support for Rosario's claim that the trial court failed to inform him of his rights and the consequences of his plea.  Accordingly, this claim will be denied as meritless.

D.   Prosecutorial Mishandling of the Case

    In this last claim asserted by Rosario, petitioner makes only a bald assertion that the prosecutor mishandled his case. There is no factual support for this allegation and nothing in the record suggests that the prosecutor acted in any improper manner during the plea and sentencing proceedings.

    Rather, the record plainly shows that both the prosecutor and petitioner's counsel agreed to reduce an apparent murder charge to an aggravated manslaughter charge, to petitioner's benefit.  Thus, this Court finds petitioner's claim to be wholly frivolous and completely without merit.

V.   CERTIFICATE OF APPEALABILITY

    This Court next must determine whether a certificate of appealability should issue.  See Third Circuit Local Appellate Rule 22.2.  The Court may issue a certificate of appealability only if the petitioner "has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  For the reasons discussed above, this Court's review of the claims

26

advanced by petitioner demonstrates that he has failed to make a substantial showing of the denial of a constitutional right necessary for a certificate of appealability to issue.  Thus, this Court declines to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(2).

**CONCLUSION**

For the above reasons, this Court finds that the § 2254 habeas petition should be denied on the merits and a certificate of appealability will not issue.  Finally, because the petition is being denied, Rosario's application for appointment of counsel will be denied as moot.  An appropriate Order follows.




S/Freda L. Wolfson_____
FREDA L. WOLFSON
United States District Judge


DATED: December 13, 2005